# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| RASHEA HAMILTON, | NO. 2:25-cv-960 |
| Plaintiff, | |
| v. | COMPLAINT |
| DISCOVER BANK, NELNET SERVICING, LLC dba FIRSTMARK SERVICES, a Nebraska Limited Liability Company, EQUIFAX INFORMATION SERVICES LLC, a Georgia Limited Liability Company, EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio Corporation, and TRANS UNION LLC, a Delaware Limited Liability Company, | **JURY DEMAND** |
| Defendants. | |

COMES NOW, Plaintiff, RASHEA HAMILTON, by and through her attorney, SARAELLEN HUTCHISON, and Complains against the Defendants as follows.

## I.      STATEMENT OF THE CASE

This is an action for injunctive relief to prevent further harm to Plaintiff and to prevent future harm to other Washington consumers and citizens and to prevent Defendants' future

violations of the Fair Credit Reporting Act (FCRA) and the Washington State Consumer Protection Act (CPA), *inter alia.*

## II.     PARTIES

2.1     Plaintiff, RASHEA HAMILTON, is a resident of the city of Seattle, Washington.

2.2     Plaintiff is a victim of identity theft; Plaintiff's estranged mother used Plaintiff's name and identifiers to obtain a student loan on behalf of Plaintiff's brother without Plaintiff's knowledge or consent.

2.3     Defendant, DISCOVER BANK ("Discover") is a bank doing business in all fifty states pursuant to NMLS number 684042 and doing business in Washington State pursuant to UBI number 603 049 552.

2.4     Defendant, NELNET SERVICING, LLC dba FIRSTMARK SERVICES ("Nelnet") is a student loan servicer doing business in Washington State pursuant to UBI number 603 063 847.

2.5     Defendants, EQUIFAX INFORMATION SERVICES LLC, a Georgia Limited Liability Company ("Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") and TRANS UNION LLC ("Trans Union"), (collectively "CRAs") are "credit reporting agencies" as defined by the FCRA, 15 U.S.C. §1681a(f).

2.6     Equifax is a Georgia limited liability company doing business in Washington State pursuant to UBI number 602126257.

2.7     Experian is an Ohio Corporation doing business in Washington State pursuant to UBI number 601738089.

2.8     Trans Union is a Delaware limited liability company doing business in Washington pursuant to UBI number 601922824.

2.9     CRAs are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d), to third parties.

2.10 CRAs disburse such consumer reports to third parties under contract for monetary compensation.

2.11 CRAs falsely reported that Plaintiff had a Discover student loan.

2.12 Discover is a "furnisher" pursuant to the FCRA, 15 U.S.C. §1681s-2 et seq.

2.13 Discover is a "business" as defined by the Washington State Consumer Protection Act, RCW 19.86, and acted as such at all times relevant herein.

2.14 Plaintiff is a "consumer" as that term is contemplated by the Washington State Consumer Protection Act, RCW 19.86, and acted as such at all times relevant herein.

2.15 Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c), and Plaintiff acted as a "consumer" at all times relevant to this litigation.

2.16 Defendants made attempts to collect and credit report a fraudulent debt at the heart of this litigation.

### III.    JURISDICTION AND VENUE

3.1 CRAs are liable unto Plaintiff pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq., as well as other applicable state and federal laws.

3.2 Discover is liable unto Plaintiff pursuant to the provisions of the FCRA, 15 U.S.C. §1681 *et seq.*, as well as other applicable state and federal laws.

3.3 Discover and Nelnet are liable unto Plaintiff pursuant to the provisions of the Washington State Consumer Protection Act, RCW 19.86 et seq., as well as other applicable state and federal laws.

3.4 Jurisdiction and Venue in the United States District Court, Western District of Washington, are appropriate where this dispute involves federal law, where all acts at issue and described herein occurred in this district, where the injury to Plaintiff occurred in this district, and where Plaintiff is a resident of this district. 15 U.S.C. §1681; 28 U.S.C. §1391(b); 28 U.S.C. §1331.

3.5     Discover and Nelnet are also liable unto Plaintiff pursuant to the laws of the State of Washington, which claims may be brought under the Supplemental Jurisdiction of this Court. 28 U.S.C. 1367 et seq.

### IV.     FACTS

4.1     Plaintiff, RASHEA HAMILTON ("Plaintiff") has a history of excellent credit.

4.2     And unfortunately, Plaintiff also has a history of her own mother using Plaintiff's identity to obtain credit in Plaintiff's name, without Plaintiff's permission.

4.3     In 2011, Plaintiff maintained an extended security freeze on her credit files to keep her mother from opening fraud accounts.

4.4     On July 30, 2024, Plaintiff received an alert that her social security number had been found on a public website.

4.5     Plaintiff obtained copies of her credit disclosures from Defendants Equifax, Experian and Trans Union (the "CRAs").

4.6     Upon review of her credit file disclosures, Plaintiff saw that the CRAs and defendant Discover were reporting a Discover student loan account opened July 2, 2015 as a "joint account."

4.7     The Discover student loan is not Plaintiff's loan.

4.8     Plaintiff was shocked to learn that Discover had been able to permit someone to open a loan in Plaintiff's name despite Plaintiff's security freeze.

4.9     Plaintiff also noticed that her credit file disclosures contained addresses and telephone numbers that do not belong to Plaintiff.

4.10    On July 31, 2024, Plaintiff telephoned Discover to dispute and request that the fraudulent account be closed.

4.11    Plaintiff spoke to an employee or representative of Discover named "Marie."

4.12    Marie was combative with Plaintiff, and refused to assist Plaintiff.

4.13    Plaintiff asked to speak to a supervisor, and Marie claimed the supervisor was "in a meeting;" Marie promised a call back but never did.

4.14	Plaintiff filed a police report with Seattle Police, tracking number 00007060.

4.15	Plaintiff also submitted an FTC identity theft report, number 175653029.

4.16	Plaintiff disputed to the CRAs through their respective websites.

4.17	In reinvestigation results dated August 3, 2024, Experian deleted the phone number and addresses that do not belong to Plaintiff.

4.18	In reinvestigation results dated August 5, 2024, Equifax stated that it had researched the account, and "verified that this item belongs to you."

4.19	Equifax also updated the historical account information and reported that the account was paying as agreed, $50 per month since 2015.

4.20	In reinvestigation results dated August 10, 2024, Trans Union stated that it had investigated the disputed account, and verified it as "accurate," but also updated the historical data.

4.21	In reinvestigation results dated August 21, 2024, Experian stated that regarding Discover, "the information you disputed has been verified as accurate…"

4.22	The Experian dispute results also stated "the credit grantor requests that you contact them directly."

4.23	Plaintiff then disputed through the CFPB complaint portal on August 21, 2024 about Discover, Equifax, Experian and Trans Union, including her Seattle Police report and her FTC identity theft affidavit, detailing that the Discover loan was fraudulent.

4.24	Plaintiff then received a letter from Discover dated August 22, 2024 stating that they were "in the process of investigating your concerns."

4.25	In its September 13, 2024 response to the CFPB dispute, Discover claimed that the student loan belonged to Plaintiff, that she was the one who had signed it, and attached loan documents.

4.26	Plaintiff, seeing these loan documents for the first time, was chagrined to learn that the "co-signer" was her brother, Jeron Hamilton, and the signature purporting to be Plaintiff's signature was in Plaintiff's mother's handwriting.

4.27 In its September 25, 2024 response to the CFPB dispute, Trans Union stated that it verified that the Discover account belonged to Plaintiff.

4.28 In its October 2, 2024 response to the CFPB dispute, Equifax stated that it verified the Discover account belonged to Plaintiff.

4.29 In its October 21, 2024 response to the CFPB dispute, Experian stated, in pertinent part that:

> Per your request to conduct a reinvestigation, we contacted the data furnisher(s) for the disputed items on your Experian credit report and asked them to verify the accuracy of the information with which you disagree. They responded and verified that the remaining disputed information was accurate as reported.

4.30 Notably, the extent of Experian's reinvestigation as described above was a data conformity check with Discover.

4.31 Plaintiff then learned that Nelnet, doing business as Firstmark Services, was the new servicer for the loan, and Nelnet gave no indication that it would handle the matter any differently from Discover.

4.32 On January 6, 2025, Plaintiff disputed to the CRAs, Discover and Nelnet, in writing via certified mail, and enclosing her police reports and FTC identity theft affidavit.

4.33 Plaintiff detailed how she believed it was her mother who did the crime, and enclosed a historical police report previously filed with the Dallas police to corroborate her statements to the Seattle Police and the FTC.

4.34 Discover and the CRAs did not cease their credit reporting as a result.

4.35 Nelnet sent Plaintiff a January 15, 2025 letter requesting similar information to what Plaintiff had already provided, plus five handwriting samples to compare the signature.

4.36 On February 4, 2025, Plaintiff emailed Nelnet in response with the requested information: a police report, an FTC identity theft affidavit, and five samples of her signature.

4.37 In a response dated February 7, 2025, Nelnet claimed to Plaintiff that Plaintiff had not provided a police report or an "affidavit of forgery."

4.38  On February 23, 2025, Plaintiff emailed her FTC identity theft affidavit and police report to Nelnet again.

4.39  Another letter from Nelnet dated February 26, 2025 appeared to be a duplicate of the February 7, 2025 letter, claiming that Plaintiff had not sent the requested items.

4.40  Plaintiff completed a second FTC identity theft affidavit dated March 22, 2025 identifying the family member suspect, and stating, "Suspect was given my social security number at the time of my birth."

4.41  Plaintiff also completed a second Seattle Police report on March 29, 2025.

4.42  Plaintiff then emailed her March 22, 2025 FTC affidavit and her March 29, 2025 police report to Nelnet on March 29, 2025.

4.43  Thereafter, Nelnet did not close the account.

4.44  In a letter dated April 1, 2025, Nelnet claimed they needed more time to investigate.

4.45  In a letter dated April 9, 2025, Nelnet claimed that "based on the information you provided, your lender has determined you are financially liable for the loan mentioned above."

4.46  And in a letter dated April 29, 2025, Nelnet stated it would continue to credit report the loan, and "found evidence that you acknowledged the debt as your own."

4.47  At the bottom of the letter, Nelnet requested a police report, FTC report, signature samples and a court verdict, if applicable.

4.48  Except for the "court verdict," everything else had already been provided multiple times.

4.49  To this day, the fraudulent student loan remains on Plaintiff's credit files.

4.50  Plaintiff seeks damages for her lost time and productivity, harm to her credit and reputation, and emotional distress, among other harms and losses proximately caused by Defendants.

4.51  Plaintiff also seeks injunctive relief against Discover and Nelnet to fix this problem and protect other consumers.

## V.     FIRST CAUSE OF ACTION

(Washington State Consumer Protection Act – as to Discover & Nelnet)

5.1     Plaintiff re-alleges sections I through IV, inclusive as though fully set forth herein.

5.2     Washington's Consumer Protection Act ("CPA") states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

5.3     The CPA applies to the actions at issue herein because the Plaintiff is a "consumer" and Discover and Nelnet are each a "business," this case involves conduct which occurred in the course of trade/commerce, the Plaintiff was damaged in her property by Discover's and Nelnet's actions, and the complaint involves a matter of public interest which is capable of repetition and will likely affect other consumers in this state.

5.4     Plaintiff believes and therefore avers that Discover permitted an identity thief to open an account in Plaintiff's name.

5.5     Discover and Nelnet, unfairly and deceptively, place the blame on Plaintiff for the false Discover account simply because the thief used Plaintiff's name and social security number.

5.6     Discover and Nelnet have put Plaintiff through an unreasonable run-around, repeatedly requesting documents from Plaintiff, claiming that they did not receive the documents after Plaintiff provided them multiple times, and misstating the facts in their denial letters.

5.7     Discover's and Nelnet's fraud dispute processes is woefully deficient; these entities have been in receipt of everything they requested from Plaintiff, but chose to ignore it.

5.8     Discover's and Nelnet's processes, policies and procedures for handling identity theft and fraud are therefore woefully inadequate to protect consumers.

5.9   Discover and Nelnet unfairly and deceptively refused to conduct reasonable fraud investigations.

5.10   Discover and Nelnet knew that Plaintiff was a victim of identity theft, but continue to hold Plaintiff responsible for the loan.

5.11   Discover and Nelnet have unfairly and deceptively refused to close the fraudulent account.

5.12   Trying to solve this problem on her own has taken Plaintiff unreasonable time, expense, frustration and inconvenience caused by Discover and Nelnet.

5.13   Plaintiff believes and therefore avers that Discover and Nelnet finds it more profitable for them to pursue victims of identity theft instead of doing the right thing and closing fraudulently-opened accounts.

5.14   Discover's and Nelnet's actions are a direct and proximate cause of Plaintiff's injuries.

5.15   Discover's and Nelnet's actions were intentional, willful, wanton, unfair, unconscionable, and outrageous.

5.16   Discover's and Nelnet's actions illustrate why injunctions are necessary to protect Plaintiff and other Washington consumers and citizens from similar harm.

## VI.   SECOND CAUSE OF ACTION

(Federal Fair Credit Reporting Act Violation, as to CRAs – 15 U.S.C. §1681e(b))

6.1   Plaintiff re-alleges sections I through V, inclusive as though fully set forth herein.

6.2   CRAs violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files CRAs published and maintain concerning Plaintiff.

6.3   As a result of this conduct, action and inaction of CRAs, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation,

emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

6.4     CRAs' conduct, action and inaction were willful, rendering CRAs liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

6.5     In the alternative, CRAs were negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

6.6     Plaintiff is entitled to recover costs and attorneys' fees from CRAs, pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## VII.     THIRD CAUSE OF ACTION

(Federal Fair Credit Reporting Act Violation  - as to CRAs – 15 U.S.C. §1681i)

7.1     Plaintiff re-alleges sections I through VI, inclusive as though fully set forth herein.

7.2     CRAs violated 15 U.S.C. §1681i by failing to delete inaccurate information in Plaintiff's credit files after receiving actual notice of such inaccuracies, by failing to conduct lawful reinvestigations, and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

7.3     As a result of this conduct, action and inaction of CRAs, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

7.4     CRAs' conduct, action and inaction were willful, rendering CRAs liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

7.5     In the alternative, CRAs were negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

7.6    Plaintiff is entitled to recover costs and attorneys' fees from CRAs pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## VII. THIRD CAUSE OF ACTION

(Federal Fair Credit Reporting Act Violation – 15 U.S.C. §1681c-2 – as to CRAs)

7.1    Plaintiff re-alleges sections 1 through VI, inclusive as though fully set forth herein.

7.2    CRAs violated 15 U.S.C. §1681c-2 by failing to delete and block information in Plaintiff's credit file that was a result of identity theft after Plaintiff disputed and provided CRAs with notice that it was a result of identity theft, wherein Plaintiff enclosed proof of Plaintiff's identity, an explanation that the identity theft information was not related to an account or transaction Plaintiff initiated, and a copy of a qualified identity theft report to law enforcement made under penalty of perjury and at risk of prosecution if the report was false.

7.3    CRAs also violated 15 U.S.C. §1681c-2 by failing to notify the furnisher of the identity theft information that the information was a result of identity theft, that an identity theft report had been filed, that the information had been blocked, and the dates of the block.

7.4    As a result of this conduct, action and inaction of CRAs, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

7.5    CRAs conduct, action and inaction were willful, rendering CRAs liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

7.6    In the alternative, CRAs were negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

7.7    Plaintiff is entitled to recover costs and attorneys' fees from CRAs pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## VIII.  FOURTH CAUSE OF ACTION

(Fair Credit Reporting Act Violation – 15 U.S.C. §1681s-2(b) – as to Discover)

8.1   Plaintiff re-alleges sections I through VII, inclusive as though fully set forth herein.

8.2   Creditors or furnishers of information to credit reporting agencies do not fulfill their respective duties to conduct a reasonable investigation into the accuracy and validity of a disputed account simply by reciting the information which is already contained within the consumer credit or account file. Diprinzio v. MBNA America Bank, N.A., 2005 WL 2039175 (E.D. Pa. Aug. 24, 2005).

8.3   Discover violated 15 U.S.C. §1681s-2(b) by continuing to furnish information to CRAs without also noting that the debt was disputed; by failing to fully and properly investigate the Plaintiff's disputes of Discover's representations; by failing to review all relevant information regarding same; by failing to accurately respond to CRAs; by failing to correctly report results of an accurate investigation to another credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of Discover's representations to the consumer credit reporting agencies.

8.4   As a result of this conduct, action and inaction of Discover, Plaintiff suffered damage, and continue to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

8.5   Discover's conduct, action and inaction were willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

8.6   In the alternative, Discover was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

8.7     Plaintiff is entitled to recover costs and attorneys' fees from Discover pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## X.     SIXTH CAUSE OF ACTION – DECLARATORY JUDGMENT
### (As to Discover & Nelnet)

10.1    Plaintiff re-alleges sections I through IX, inclusive as though fully set forth herein.

10.2    This Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201. *See also,* RCW 7.24.120 ("This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.")

10.3    Plaintiff has been living with uncertainty about the fraudulent loan, and Discover and Nelnet have persisted in demanding payment from Plaintiff despite notice that the loan is fraudulent.

10.4    Plaintiff engaged in exhaustive efforts to investigate and resolve this matter on her own, including disputes to the Defendants named in this case and reporting the crimes to the appropriate authorities, but even this lawsuit may not bring Plaintiff complete and permanent resolution because the FCRA and CPA do not directly provide for a legal determination of the validity of a debt.

10.5    Additionally, the resources of law enforcement are finite to pursue property crimes, and Plaintiff cannot wait for the conclusion of a criminal case that has not yet even been commenced to get relief from the debt Discover and Nelnet.

10.6    And finally, Nelnet has requested that Plaintiff provide a "court verdict" for its consideration.

10.7    This Court should therefore issue a Declaratory Judgment that Plaintiff does not owe the debt Discover and Nelnet claim against Plaintiff, that Plaintiff is a victim of identity theft, and the loan at issue is the product of fraud.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants as follows:

A.    For an Injunction preventing Discover and/or Nelnet from ever again attempting to collect the fraudulent account from Plaintiff, pursuant to RCW 19.86.090, and Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007); Hockley v. Hargitt, 82 Wn.2d 337, 349-50, 510 P.2d 1123 (1973); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 783-84, 719 P.2d 531 (1986); Lightfoot v. MacDonald, 86 Wn.2d 331, 335-36, 544 P.2d 88 (1976);

B.    For an Injunction preventing Discover and/or Nelnet from ever selling, transferring, or assigning this debt under Plaintiff's name, pursuant to RCW 19.86.090, and Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007); Hockley v. Hargitt, 82 Wn.2d 337, 349-50, 510 P.2d 1123 (1973); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 783-84, 719 P.2d 531 (1986); Lightfoot v. MacDonald, 86 Wn.2d 331, 335-36, 544 P.2d 88 (1976);

C.    For a Declaratory Judgment that Plaintiff does not owe the Discover/Nelnet student loan debt at issue herein, that the loan is fraudulent and the product of identity theft;

D.    As to Discover, for Actual and Compensatory damages in an amount to be proven at trial, pursuant to RCW 19.86 et seq. and various common law claims;

E.    As to the CRAs and Discover, for Actual and Punitive damages in an amount to be proven at trial, pursuant to 15 U.S.C. §1681 et seq;

F.    For Incidental and Consequential damages in an amount to be proven at trial;

G. As to Discover and Nelnet, for treble Plaintiff's Actual Damages up to the amount of $25,000, pursuant to RCW 19.86, *et seq.*;

H. For costs and reasonable attorney's fees in an amount to be proven at trial pursuant to 15 U.S.C. §1681 and RCW 19.86 *et seq.*;

I. For interest on the above amounts as authorized by law;

J. For other relief as the Court deems just and equitable;

K. For leave to amend this complaint as needed and as required; and

L. For leave to seek Civil Rule 23(b) status if information becomes available through discovery supporting the need for class action status.

## XII. JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to U.S. Const. Amend. 7.

Dated this 21st day of May, 2025.

Respectfully submitted,

S//SaraEllen Hutchison
SARAELLEN HUTCHISON (WSBA No. 36137)
Law Office of SaraEllen Hutchison, PLLC
1102 A St. Ste. 300 PMB 66
Tacoma, WA 98402
Telephone: (206) 529-5195
Facsimile: (253) 302-8486
E-mail: saraellen@saraellenhutchison.com